KLIEBERT, Chief Judge.
This matter comes before us on an appeal taken by the plaintiff, A1 Copeland Enterprises, Inc., from a judgment of the lower court which maintained the defendant’s declinatory exception of lack of jurisdiction over the person. For the reasons hereafter stated, we affirm.
*641 The suit is one seeking damages and injunctive relief arising out of an alleged contract to build a racing boat. The defendant, Cougar Holdings Limited, is a corporation organized under the laws of the United Kingdom, having its principal place of business at Cougar Quay, School Lane, Hamble, Hampshire, England. Specifically, it is alleged that the contract was on a “work-for-hire” basis involving a “45 foot super boat” and that plaintiff had incurred substantial investments amounting to at least $550,891.38 including a “good faith” payment of $61,200.00.
No testimony was taken nor evidence presented at the trial court level, the facts being offered by affidavits presented by the respective litigants. As we understand it, these taken together establish the following facts:
Cougar Holdings Limited, is a company organized under the laws of the United Kingdom with its place of business as set out above. It maintains no business office in the United States, has no employees who reside or conduct business in this country, nor does it have any officer or agent for service of process within our borders. It has never paid taxes in this country nor had assets or bank accounts here. It has never filed suit in the courts of Louisiana. It has advertised in two boating publications that are distributed in this country nationally, but has never advertised in any local Louisiana media.
Two boats were constructed for plaintiff or one of its affiliates by the defendant in the past. In January of 1990 a Mr. Clive Curtis of the defendant company met with Mr. A1 Copeland of the plaintiff organization in Jefferson Parish, at which time discussion was had with respect to the construction of a boat. No agreement was reached at that time, but subsequently through various correspondence and telephone calls an agreement was arrived at whereby defendant would begin construction of a boat upon deposit by plaintiff of L30,000 (Sterling) in defendant’s bank in England. This deposit was in fact made but no other agreed upon payments were received by the defendant. Delivery of the vessel was to be made to plaintiff at defendant’s place of business in Hampshire, England, but was never effected due to the fact that additional payments had not been made as agreed upon. No other boat had ever been constructed nor any agreement reached for the construction of one for any other Louisiana resident.
Though the affidavits refer to the construction of two other boats on prior occasions, there are no facts whatever supplied with respect to the transactions involved, i.e., wherein, when, and by whom they took place, and the like. For all that is shown by the record, a representative of plaintiff may have gone to England, contacted the defendant and confected the agreement with respect to the boats there; conversely, defendant through its agent could have come to Louisiana, solicited the business and had the agreements consummated here. Not having pertinent information with respect to either of these prior transactions between the parties we treat the questions presented as simply whether our courts can exercise' jurisdiction over Cougar, an English company, under the facts presented as the subject matter of this particular litigation and not with any consideration of what may or may not have transpired between the parties in the past.
We recognize, initially, that which is now well established in these matters and that is that under our Long Arm Statute, the jurisdiction of our courts extend to the limits of due process. LSA-R.S. 13:3201, 1987 comment. Or, put another way, and as has been held “As the limits of Louisiana’s Long Arm Statute and the limits of constitutional due process are now co-extensive, the sole inquiry into “jurisdiction over a non-resident is a one-step analysis of the constitutional due process requirements.” J. Wilton Jones Co. v. Touche’ Ross & Co., 556 So.2d 67 at page 68 (La.App. 4th Cir.1989); Superior Supply Co. v. Associated Pipe & Supply Co., 515 So.2d 790, 792 (La.1987).
Constitutional due process requirements are held to have been met when a nonresident has “minimum contacts” with a state chosen as the forum and the mainte *642 nance of the suit there follows traditional notions of fair play and substantial justice. Vault Corp. v. Quaid Software Ltd., 775 F.2d 638, 639-40 (5th Cir.1985), citing Burger King v. Rudzewicz, 471 U.S. 462, 473-76, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985). The “minimum contacts” test has been held to required that “the defendant purposefully avails itself of the privilege of conducting activities within the forum stated, thus invoking the benefit and protection of its laws.” J Wilton Jones Co., supra, (emphasis by Court); Growden v. Ed Bowlin & Assoc., Inc., 733 F.2d 1149, 1151 (5th Cir.1984), quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).
Counsel for appellant cite two Louisiana cases as controlling and authority for reversal.
The first of these, Delaunay v. Mobile Telephone of South Central Louisiana, 477 So.2d 802 (La.App. 5th Cir.1985), decided by this Court in 1985, we do not find to be apposite or persuasive. There, the Arizona residents who were held to be subject to suit in our courts had come on repeated occasions over a period of time to our State to induce our citizens to invest in their corporation. Here, Cougar had only one meeting with the plaintiff and at whose instance the meeting was held is not reflected by the record. We do not know whether the Cougar representative solicited plaintiff or vice versa. We do know, however, that no contract or agreement was reached at that meeting and that an agreement was only reached at a later date as the result of long distance telephone conversations and correspondence.
Urged also as authority for reversal is the recent holding of the Fourth Circuit in the case of Babcock & Wilcox Co. v. Bab-cock Mexico, S.A. de C.V., 597 So.2d 110 (La.App. 4th Cir.1992), writ denied, 600 So.2d 679 (La.1992). While urged by appellant as being “precisely on point,” we find differences between the facts presented in that case and this. There the parties signed a Letter of Intent at their initial meeting and, in furtherance of the agreement, held two additional meetings in Louisiana. While the Court found that “Bab-cock Mexico did not have ‘continuous and systematic’ contact with Louisiana necessary to support general jurisdiction,” it did have specific jurisdiction based upon meetings which even “pursuant to a carefully conceived and deliberate plan, they were ongoing over a long period and they were substantial, significant and productive.” Such is not the case here, where only one meeting took place in this state, with no letter of intent or other instrument even being presented and with no follow-up meetings to deliberate upon or reach an agreement. The only agreement ever reached here was as the result of long distance negotiations and predicated upon the deposit of pounds sterling in a bank in England with delivery of the boat, when manufactured, to take place in England.
Counsel for appellee urge as the most analogous authority, the case of Charia v. Cigarette Racing Team, Inc., 583 F.2d 184 (Fed. 5th Cir.1978). There, the defendant was a Florida boat building corporation which had placed several advertisements in national boating magazines. Plaintiff, a Louisiana resident, saw the ads and wrote to defendant seeking additional information. Defendant replied and then sent plaintiff literature about its product. The parties corresponded through telephone calls, some of which defendant initiated. While on a trip to Florida, plaintiff visited defendant’s plant and verbally agreed to purchase a boat. Plaintiff gave defendant a $3,000 check drawn on a Louisiana bank as a down payment. When the boat was ready, plaintiff sent defendant a check representing the balance due. This check was also drawn on a Louisiana bank. Thereafter, the boat was shipped FOB Miami, Florida, defendant having arranged shipment with an independent private carrier. After plaintiff experienced problems with the boat, he filed a redhibition suit against defendant in a Louisiana court. The defendant filed an exception of lack of personal jurisdiction which was sustained by the trial court and the suit was dismissed. The Federal Fifth Circuit affirmed the trial court decision holding that the defendant had insufficient minimum contacts with *643 Louisiana to justify the existence of personal jurisdiction over the defendant. The court pointed to three (3) previous sales made by defendant to Louisiana residents for which it had received $85,000 as isolated and sporadic and did not involve purposeful conduct by defendant availing itself of the benefits and protection of Louisiana’s laws.
Counsel for appellant’s argument that the Charia case is ‘no longer good law,” is in error. It has been cited with approval as late as 1989 in the J. Wilton Jones Co. case, supra, and we deem it pertinent and authoritative here.
In conclusion, we reiterate that we consider that the record in the matter reflects but one contact in this state between the parties and that subsequent long distance negotiations resulted in the deposit of pounds sterling in a bank in England by the plaintiff with the result that a boat was to be constructed and delivered in England by the defendant. The defendant did not seek to avail itself of any of our laws and to hold that it is now subject to the exercise of jurisdiction by our courts would be offensive, we think, to traditional notions of fair play and substantial justice.
Therefore, we affirm the decision of the trial court. The appellant is to pay all costs of the appeal.
AFFIRMED.